## PINDALL et al. vs. TREVOR & COLGATE.

1. **PLEADING:** *Defects in a bill in chancery cured by the answer.*
   Where the allegations of a bill in chancery are defective, but the averments of the answer supply the defect, the plaintiff may have a decree on the latter.

2. **STATUTE OF FRAUDS:** *Part performance.*
   The delivery of possession under a verbal contract for the sale of real estate will take the case out of the statute of frauds.

3. **IMPLIED TRUST:** *How created.*
   A party who enters into a written contract for the purchase of land, as the agent of another, who had made a verbal contract of purchase on the same terms but failed to make the stipulated payments, and is afterwards reimbursed by the other party or his representative, for payments made under the purchase, will be held as a trustee for the original purchaser, whether the latter had knowledge of the transaction or not, and one who purchases from him with knowledge of the facts takes subject to the trust.

4. **Same.**
   A purchaser, at execution sale, of property which is affected by a trust, takes it subject to the trust.

| | |
|---|---|
| 30 | 249 |
| 58 | 260 |
| 30 | 249 |
| 60 | 75 |
| 30 | 249 |
| 68 | 157 |
| 30 | 249 |
| 173 | 99 |
| 77 | 7 |
| 30 | 249 |
| 79 | 102 |
| 30 | 249 |
| 83 | 415 |

Pindall et al. vs. Trevor & Colgate.

5. PLEADING: *Innocent purchaser, etc.*
One who relies on the defense of an innocent purchaser without notice must allege all the facts necessary to constitute the defense.

6. —— *Cross bill.*
Where the allegations of a cross bill are foreign to the subject matter of the original bill, it should not be allowed to be filed, or if filed, should be stricken out; the code does not permit a departure from the original subject matter.

7. PARTIES IN CHANCERY:
Beneficiaries in a deed of trust, who are represented in a suit affecting the subject matter of the trust by their trustee, are neither necessary or proper parties.

8. *Purchaser pendente lite, etc.*
One who purchases pending litigation, and after maturity, a claim that is secured by a deed of trust, takes with notice and is affected by all the equities attaching to the subject matter of the trust.

9. JUDICIAL SALE: *Inadequacy of price.*
Mere inadequacy of price, unmixed with fraud, does not vitiate a sale under execution.

10. JUDGMENT LIEN: *Paramount to subsequent mortgage.*
This court would be slow to admit the doctrine that a deed of trust or mortgage executed and recorded subsequent to a judgment of the Circuit Court, would, under any circumstances, create a paramount lien.

APPEAL from *Desha* Circuit Court in Chancery.

Hon. M. L. STEPHENSON, Circuit Judge.

*R. Hutchinson,* for complainants.

The sale of the land under Randolph's execution, whilst subject to the mortgage of Trevor & Colgate, was, at least, of very doubtful propriety. *Kissem* v. *Nelson,* 2 Heiskell's Rep., (Tenn.).

Inadequacy of price should be of great weight to set aside execution sales. *Cummings* v. *Little,* C. E. Greene's Chan. R. (N. J.), p. 51. This to be taken in connection with the excessive amount of the levy, and the fact that plaintiffs in the execution were purchasers. See *Lessee of Allen* v. *Parish,* 3 Ohio R.; *Lessee of State* v. *Maclaster,* 9 id.; *Reynolds* v. *Nye,* 1 Freeman's Ch. R. (Miss.), 469. It is abuse of power in a Sheriff to knock off property at a price grossly inadequate. He should rather

adjourn the sale.   See *Reynolds* v. *Nye, supra; Knightly* v. *Burch,* 3 Camp. R., 520; *Tinkum* v. *Purdey,* 5 John. R., 345; *McDonald* v. *Neilson,* 2 Cowen's R., 139; *United States* v. *Drennen,* Hempstead's R., 320; *Russell* v. *Richards,* 11 Maine R., 371; *Lantz* v. *Worthington,* 4 Burrs R., 153; *Warren* v. *Leland,* 9 Mass. R., 265; *Richards* v. *Holmes,* 18 Howard, 147; *Cummings* v. *Little, supra* (p. 49).

Cases cited of sales set aside.   *Fowler* v. *Stoneman,* 6 Texas, 60; *Allen* v. *Stephanes,* 18 ib., 658; *Swires* v. *Brotherline,* 41 Penn. State R.; *Swope* v. *Ardery,* 5 Ind., 213; *Tiernan* v. *Wilson,* 6 Johnson Ch. R., 413; *Howell* v. *Baker,* 4 ib., 411; *Ennis* v. *Waller,* 3 Blackf., 780.

Mrs. Church's heirs not affected by the sale.   It conveyed only the interest defendant, in judgment, had when rendered.   The parol contract was not void but voidable.   *Dyer* v. *Dyer,* 2 Heis., 134.

A judgment lien not preferred to prior equities, or unrecorded conveyances.   See *Watkins* v. *Wassell,* 15 Ark., 73, and cases cited in the Am. notes to *Bassett* v. *Nosworthy,* 2 vol. L. Ca. in Eq.; *Byers* v. *Engles,* 16 Ark., 543; Sto. Eq., sec. 1503 and note; *Walker* v. *Gilbert et al.,* 1 Free. Ch. R., 96; *Click* v. *Click* and *Glass* v. *Glass,* 1 Heis. (Tenn.), 607 and 613; *Baker* v. *Morton,* 12 Wall.; *Sandford* v. *Weeden,* 2 Heis., 81; *Roberts* v. *Francis,* ib., 132, especially if the purchase be *pendente lite.*   See also *Osterman* v. *Baldwin,* 6 Wallace (U. S.), 122.

*W. G. Weatherford,* for cross claimants.

Previous to the execution of Anderson's agreement with Kline and Peale, Mrs. Church owned the land under the parol contract partly performed.   *Keatts* v. *Rector,* 1 Ark., p. 418.   *Morrison* v. *Peay,* 21 ib., 113; *Kellums* v. *Richardson,* 139.

It is sufficient that this parol agreement was *discovered* by the answers of Randolph and Anderson, although not relied on in

the original bill.   *Mortimer* v. *Archard*, 2 Vesey, 243; *Rose* v. *Mynatt*, 7 Yerger, 30; *Maury* v. *Lewis*, 10 Yer., 118.

Kline and Peale took for Mrs. Church's benefit, and had no right to sell and direct conveyance to Carroll, who admits he had notice of Mrs. Church's right at the time, and held only dry legal title.   See Perry on Trusts, sec. 217, and *Le Neve* v. *Le Neve*, 2 Eq. Lead. cases.   No trustee, unless empowered, can sell. Story, secs. 520-1 and 609; Hill, 316; Lewin, 18 Scam., 127.

Randolph & Pindall having notice, took by their purchase, subject to this trust, *Baker* v. *Morton*, 12 Wall, 150.   Purchaser at execution sale gets only debtors' title.   *Horner* v. *Hanks*, 22 Ark.; *Carson* v. *Benedict*, 2 W. C. C., 33; *McKay* v. *Carrington*, 1 McClain, 50; *United States* v. *Duncan*, 4 McL., 607; *Click* v. *Click*, 1 Heiskell Tenn., 607; *Jackson* v. *Town*, 4 Cowan, 599; *Jackson* v. *Post*, 9 id., 130—15 Wend., 588, *Buchan* v. *Sumner*, 2 Barb. ch., 165; *White* v. *Duncan*, 1 Ohio N. S., 110; *Coleman* v. *Cook*, 6 Randolph, 618; *Ash* v. *Livingston*, 2 Bay, 80; *Massy* v. *McIlvane*, 2 Hill ch., 426; *Orth* v. *Jennings*, 8 Blackf., 420; *Williams* v. *Hollingsworth*, 1 Strobh. Eq., 103; *Bank* v. *Campb.*, 2 Reil. Eq., 179; *Jackson* v. *Dubois*, 4 John., 216; *Watkins & T.* v. *Wassell*, 15 Ark.; *Byers* v. *Engles*, 16 Ark.

Of this trust, these cross-complainants had no notice, and advanced money on the faith of Carroll's ownership, and title by recorded deed.   They were purchasers for value, whom equity will not disarm.   See Perry, sec. 218; *Bassett* v. *Nosworthy*, *supra*. in Lead. Ca. in Eq.; Adams Eq., p. 148, (Mar.); *Bayerly* v. *Gaither*, 2 Jones Eq., 86; *Love* v. *Taylor*, 26 Miss.; *Padgett* v. *Lawrence*, 10 Paige; *Morse* v. *Godfrey*, 3 Story; *Upshaw* v. *Hargrove*, 6 S. & M.   We therefore claim superior not only to heirs of Mrs. Church, but to judgment purchasers.

Carroll's note to Kline & Peale was a lien of which the execution purchasers had notice, and they should offer to pay it off,

if it were conceded that Kline & Peale could sell. *Shall* v. *Biscoe*, *Moore & Cuiel* v. *Anders*, *Smith* v. *Robinson*. See also Daniel's Ch. Tr., 181–195. On the subject of proper parties, and the practice involved they cited *Shield* v. *Trummel*, 19 Ark., to sustain the cross bill—also *Horner* v. *Hanks*, 22 Ark. Code, sec. 108.

On the point of relief against gross inadequacy of price at execution sales, cited, *Bright's heirs* v. *Tobin*, 7 Monroe, 616; *Woods* v. *Morrill*, 1 Johnson Ch., 502; *Turman* v. *Woods*, 6 id., 411; *Troup* v. *Woods*, 4 id., 228; *Howell* v. *Baker*, id., 118; *Gist* v. *Frazer*, 2 Litt., 118; analogous *Strates, Ex.* v. *Commissioners*, 4 Cr., 403. Sheriff ought not to sacrifice property, but return it not sold, for a vend. Ex. *Knightly* v. *Birch*, 3 Camp., 520; *Tinkern* v. *Purdy*, 5 John, 345; *McDonald* v. *Nilson*, 2 Cowan, 139; *Reynolds* v. *Nye*, Freeman's Chan., 462.

*Garland*, for Wiggs *et al.*

In addition to authorities cited, and points made by Mr. Hutchinson, creditors should have been compelled to exhaust their remedies on lands not claimed by Wiggs *et al.*. 2 Washburne's Real Property, 202–3, and notes; 3 ib., 19, and notes; Adams' Eq., 271–77.

The court should establish the trust for Mrs. Church's heirs. The only remedy is in equity. *Rhea* v. *Duryear*, 26 Ark., 344; *Cain* v. *Leslie*, 15 Ark., 312; Kerr on Fraud and Mistake, 289; ib., 321; 2 Wash. R. T., 439, sec. 12; *Trapnall* v. *Brown*, 19 Ark., 39; *Simpson* v. *Montgomery*, 25 Ark., 365. The case of *Danly* v. *Byers* does not apply.

The property may in any event be followed for the purchase money. *Kerr, supra*, 107, 119.

The pleadings do not deny that Carroll had notice. See, *Miller* v. *Fraley*, 21 Ark., and cases cited—and, in fact, he did, and is chargeable with the trust. 2 Wash. Real Prop., p. 450

(top) sec. 21 ; Kerr, *supra*, 172 *et seq.* Nor is it averred that Carroll was ever seized.    21 Ark., *supra.*

*Pindalls*, with whom are *Clark & Williams* and *E. H. English* for  Pindall & Randolph.

On the point that inadequacy of consideration will not vitiate cited *Wagner* v. *Phillips*, 41 Mo. 117 ; *Croner* v. *Smith*, 49 Mo., 318.    And if the sale is attacked at all it should be by direct proceeding on the part of the person interested.    See also *Cooper* v. *Reynolds*, 10 Wall, 308 ; *Meir* v. *Kelle*, 31 Mo., 331 ; *San Francisco* v. *Pixby*, 21 Cal., 56 ; *Day* v. *Graham*, 1 Graham, Ill.; *Comstock* v. *Purple*, 49 Ill., 160 ; *Cavender* v. *Smith*, 1st Iowa, 355 ; *Wallace* v. *Berger*, 25 Iowa, 460 ; *Reed* v. *Brooks*, 3 Little, 127.

The case of *Thomas* v. *Randolph*, 23 Ark., and *Brittan* v. *Hanley*, 20 Ark., are assumed to have settled the law in this State on this point, and become a rule of property.

Cross complainants were not innocent purchasers without notice.    *Beech* v. *Martin*, 27 Ark., 6 ; *Luley* v. *Ready*, 27 Ark., 102.

C. B. MOORE, SP. J.:

This was a suit brought on the chancery side of the Desha Circuit Court, to the fall term of 1867, by Wiggs and others, the heirs of Mrs. Maria L. Church, against Lafayette J. Carroll, Wm. R. Anderson, John A. Klein, Carroll, Hoy & Co., Elihu Randolph, W. Warren Johnson and F. S. & F. G. Schlessinger, on original bill, and by Trevor & Colgate against the heirs of Mrs. Church, Randolph and others on cross bill.

Complainants in the original bill allege that by an agreement in writing, dated January 1st, 1855, Wm. R. Anderson covenanted and promised with and to John A. Klein and Jacob Peale, for the use and benefit of Maria L. Church, on the fulfillment of certain promises of Klein and Peale, the payment of

taxes, etc., and for the expressed consideration of $2,900 paid down, and two writings obligatory of Klein and Peale, each for the sum of $1,450 payable respectively on the 1st of January, 1856, and 1st of January, 1857, to make or cause to be made to them, a deed with usual covenants of warranty, to the West half of Northeast quarter of section thirty-five, and the Southeast quarter of section twenty-six (less eight acres specifically excepted) all in township nine, South of range two West, and containing in all 232 acres.

That the purchase of this land by Klein and Peale was made with the money of Mrs. Church, the mother of all the complainants, except James A. Wiggs, who is the husband of Lucy, one of the heirs; that Mrs. Church died soon after the purchase, and that by her death the beneficial interest in the land was cast on complainants. That the land was held in trust, by Klein and Peale, for Mrs. Church and her heirs. That Klein and Peale, in fraud of the rights of complainants, on the 1st day of January, 1857, sold the lands to Lafayette J. Carroll, for the express consideration of $6,000 payable five years after date with eight per cent. interest, and that Carroll executed his note to Klein as guardian of the heirs of Maria L. Church for the amount and payable as above stated.

After this sale to Carroll, Klein and Peale instructed Anderson in writing to make a deed to Carroll for the land, and to reserve a lien in the deed for the purchase money.

That on the 10th of April, 1857, Anderson executed a deed to Carroll with covenants of warranty and relinquishment of dower for the express consideration of $5,800; but that Anderson, in neglect and violation of his instructions, incorporated no lien in the deed.

Complainants aver that Klein and Peale acted without authority in selling the lands to Carroll, though Klein was the guardian of Mrs. Church's children, but even if he had authority

that Anderson made the deed, without reserving a lien as expressly directed, that Carroll had full notice of the trust in Klein and Peale, and of Anderson's violation of his instructions, and claim the deed to Carroll is absolutely null and void.

Peale died after the execution of the deed to Carroll, and his heirs are not made parties to the suit.

At the date of filing the original bill complainants were all minors except Mrs. Wiggs, who had recently become of age. Immediatlely after the execution of the deed to Carroll, he took possession of the lands, and has retained it ever since.

Complainants further aver that in the exercise of his ownership or pretended ownership of the lands, Carrroll permitted apparent incumbrances on them which are clouds on the claim and title of complainants. These incumbrances consist of judgments against Carroll, one for about $800 in favor of defendant Randolph, and one in favor of Carroll, Hoy & Co., for nearly $9,000, both obtained in the Desha Circuit Court on the 1st day of November, 1866, and a deed of trust executed by Lafayette J. Carroll and wife, on the 12th of February, 1867, to W. Warren Johnson as trustee for F. S. & F. G. Schlessinger, to the land in question and a large amount of other lands.

Complainants pray that the title to the lands described in their bill be decreed to them, their title quieted and that the encumbrances be set aside and held for naught. Or that, if the conveyance to Carroll by Anderson be held legal and valid, the $6,000 note executed by Carroll to Klein, with the interest thereon, be decreed a lien on the lands in complainants' favor and the lands be sold to satisfy the same, and for general relief.

Several of the defendants filed answers to this bill. Randolph filed special demurrer, which was sustained, with leave to complainants to amend their bill, which they afterwards did, setting

out, with more accuracy and formality, the averments of the bill first filed.

Carroll, Hoy & Co. filed a formal answer. As they have never taken any step beyond obtaining their judgment against L. J. Carroll, their interest in the case will not be further noticed.

W. Warren Johnson, trustee for the Schlessingers, also answered, setting up his trust deed, and claiming to be an innocent purchaser of the lands without notice.

Defendant Randolph answered the bill as amended, denying all knowledge of the transactions except as shown by the contract between Anderson and Klein and Peale. He charges the facts to be that in 1854 Anderson was the owner of the lands described in the complainants' bill, and in that year he made a verbal conditional agreement with Mrs. Church for the sale of the land for $5,800, of which $2,900 was to be paid January 1st, 1855; $1,450 January 1st, 1856, and $1,450 January 1st, 1857, and that on failure of Mrs. Church to make any of these payments when due, she was to forfeit the payment, with the land. Claiming that the contract of sale was verbal, and no memorandum or agreement in writing, Randolph sets up and relies on the statute of frauds. He claims that Mrs. Church never paid any part of the purchase money, except the $1,250, within the time specified in the verbal contract, and that she forfeited the contract. That afterwards Anderson resold the lands to Klein and Peale, for the unpaid and deferred payments that Mrs. Church was to have made $1,650 cash, and two bonds of Klein and Peale for $1,450 each, due respectively January 1st, 1856, and January 1st, 1857, and that the agreement between Klein and Peale and Anderson was then executed and dated as of January 1st, 1855, and so framed as to cover and include the $1,250 paid by Mrs. Church.

*Vol. xxx.—17.*

That Klein and Peale paid the second payment and exercised ownership over the lands, and tried to sell it as their own, and insists that they were the true owners of the equitable title; that they made default in the last payment, and sold their equitable title to Carroll and authorized Anderson, on payment by Carroll of the money due him, to convey the lands to Carroll; that Carroll made the last payment and received a deed from Anderson, which was acknowledged and recorded, and that Carroll received possession of the land from Klein and Peale, and continued in possession with no cloud on his recorded title.

He denies that Klein and Peale were Mrs. Church's agents or paid the money out of her assets; denies all material allegations of the bill, except the recovery of his judgment, and that of Carroll, Hoy & Co., and the execution of the trust deed to W. Warren Johnson; insists that his judgment was obtained before notice of the pretended rights of complainants and long before commencement of the suit; that before the filing of the amended bill, he had caused execution to be issued on his judgment, and levied on the lands and sold them on the 26th of October, 1868, and that he (Randolph) and L. A. and X. J. Pindall, became the purchasers under the execution. The Sheriff's deed is made an exhibit to the answer.

Anderson also answered the bill. His answer is very similar to that of Randolph. He goes somewhat more into detail of the transactions between himself and Klein and Peale. He states one fact not mentioned by Randolph, and which is material, to-wit: that on the 1st of January, 1855, he surrendered possession of the lands to Mrs. Church under the verbal contract, after having received from her the $1,250.

Randolph may be considered as the only one of the defendants really and vigorously contesting the claim of the Church heirs.

The depositions of Anderson, Klein, Carroll and X. J. Pindall were taken in reference to the issues made by the bill and answers.

After the original bill, as amended, was filed, Trevor & Colgate moved to be made defendants, claiming to be assignees of the Schlessingers, of the debt secured by the trust deed to Johnson.

Leave was granted and they filed their answer and cross-bill. They exhibit a general assignment by the Schlessinger's of their assets to them. They make all the complainants, and some of the defendants to the original bill and some other persons defendants to their cross bill.

Randolph moved to strike out the cross-bill. The motion was overruled and the defendants thereto answered.

Several depositions were taken as to the pionts raised by the cross-bill, but the aspect of the case was not materially changed, except the fact seems to be more fully proven that Mrs. Church was living when the agreement between Anderson and Klein and Peale was executed.

At the hearing, the court below decreed that the deed of Anderson to Carroll, to the lands claimed by the Church heirs be cancelled and delivered up as fraudulent, and that Anderson execute a deed to the complainants in the original bill, as the heirs of Mrs. Church, to said lands.

That the deed of trust to Johnson, assigned to Trevor & Colgate is a prior lien to that of the heirs of Mrs. Church, on those portions of the lands in said trust deed embraced in Anderson's deed to Carroll, and that they and certain other of the lands, included in the trust deed and not sold under Randolph's execution, and not claimed by the heirs of Mrs. Church, are subject to sale under said trust deed, and the court ordered them sold by the trustee, Johnson, if the amount of Trevor & Colgate's debt

was not paid by a day named in the decree. The court further decreed that so much of the cross-bill, as prays the setting aside of the execution sale of the lands mentioned in the trust deed and claimed by the Church heirs, be dismissed. Their own costs were decreed against the respective parties.

The case comes up to this court on appeal taken by Randolph, Trevor & Colgate, and the Church heirs.

After this detailed statement of the facts and condition of the pleadings, as found by the transcript, and which has seemed to us unavoidable in order to a clear and correct understanding of the points involved in this controversy, when we sift out the real merits of the case, from the immense amount of rubbish with which they are encumbered and surrounded, we find the questions presented to us for review and decision, comparatively few.

Our first inquiry must be as to the rights of Mrs. Church and through her to her heirs, under the parol contract made by her with Anderson in November, 1854. Whilst it is true that the complainants in the original bill do not base their claim on this contract, but rely upon the written agreement or title bond executed by Anderson with Klein and Peale, it must be borne in mind, that this parol contract of 1854, does not appear to have been known to them until the answers of Anderson and Randolph were filed. Both of these defendants discover the facts. Anderson sets out the circumstances connected with it with much minuteness, and reiterates them in his deposition. This contract being thus admitted in the answers, even if there were no evidence to support the admissions, dispensed with the necessity of its averment by the complainants, according to well established principles of equity practice.

If the statement in a bill be wholly defective, still a decree may be made on the answer. See *Mortimer* v. *Orchard*, 2 Ves.

Jr., 245 ; *Rose* v. *Mynatt*, 7 Yerger, 30 ; *Maury* v. *Lewis*, 10 Yerger, 118.

In *Rose* v. *Mynatt*, Green, J. said : " It is said that the court cannot decree in this cause, and because the bill is not framed with a view to the aspect of the case as we have considered it. It is true that the case made in the bill is entirely different from the one we have discussed as being presented in the answer, and it is much to be regretted that the bill was not amended upon the Chancellor's suggestion so as to embrace the truth of the case.

" As a general rule, in a Court of Equity as well as a Court of Law, the party must recover according to his allegation, if at all. But this rule is not so strictly enforced in equity as at law. Newland on Contracts, 163, etc." And decree was rendered on the facts admitted in the answer.

In the case at bar, there is no material conflict or difference between the state of facts as presented and alleged in the complainant's bill, and relied on by them, and the terms of this parol contract, revealed to them for the first time by defendants in their answers, but there is rather, we think, a harmony between them, and, as we will presently attempt to show, the one was but a continuation of, and an effort, at least, to consummate and perfect the other.

Counsel for defendants in the original bill, seem to have regarded this parol contract as included within the scope of the case as presented by the complainants, and have argued, with great earnestness and force, to prove the parol contract of 1854 void, under the statute of frauds.

Was this parol contract between Mrs. Church and Anderson void by the statute of frauds ? It is admitted and very abundantly proved that $1250 of purchase money was paid by Mrs.

Church and accepted by Anderson, and that Anderson placed her in full possession of the land; that he left the land and purchased another place and moved on to it.

The statute of frauds is not an utterly inflexible one. Like all others of its class, it has its exceptions and modifications and equity, especially, will always apply the exceptions and modifications when truth and justice demand it, and where the facts by the evidence warrant it.

In the early case of *Keatts* v. *Rector*, 1 Ark., 418, this court held, "that if possession be delivered and obtained solely under the contract, and in reference exclusively to it, then the possession will take the case out of the statute, etc." This doctrine has been steadily adhered to, by this court, from that time onward, and this case has been frequently adverted to and approved. See *Cain* v. *Leslie*, 15 Ark., 312; *Rhea, ad.,* v. *Puyear et al.,* 26 Ark., 344.

It is hard for us to conceive of a case, as shown by the pleadings and evidence, more clearly falling within the doctrine of these cases.

This point established, we regard it as unquestionable that, until the execution of the agreement between Anderson and Klein and Peale, Mrs. Church owned the equitable title to the lands subject to the payment of the balance of the purchase money.

Our next inquiry is as to the value and effect of the written contract between Klein and Peale and Anderson, made as of date January 1st, 1855. This contract or title bond, which is made an exhibit to the bill, was entered into by Anderson with Klein and Peale, and is signed by Klein and Peale as the agents of Mrs. Church, and purports, on its face, to be for the use and benefit of Mrs. Church. The rule of interpretation of all instruments is that they shall receive the most natural and reasonable

construction of which they are capable, that interpretation to be aided, of course, by the light of evidence, where it exists.

Here we find Anderson, a few months after making the sale under parol contract, between himself and Mrs. Church, going to the City of Vicksburg, to find Mrs. Church, with the express intention of carrying out the terms of the parol contract by making further collections of money on that contract. Failing to see Mrs. Church, who appears to have been in feeble health, he continues his negotiations with Klein, the brother-in-law of Mrs. Church, and Peale who appears to have been her intimate friend. He, then and there, received from Klein $1650, the exact amount of the balance due on the first payment under the parol contract, and made his title bond, dating it as of the 1st of January, 1855, and took the notes of Klein and Peale at the same time and for the exact amount of the deferred payments in the original parol contract between himself and Mrs. Church. Klein in his deposition says this was all done at the request and with the consent of Mrs. Church. Klein and Peale style themselves the agents of Mrs. Church, and seem to have been so regarded and treated by Anderson. Peale seems to have been rather a nominal party in the whole transaction.

Klein, as the evidence shows, afterwards paid the notes, and was reimbursed for the same out of the property of Mrs. Church's heirs, she having died shortly after the written contract was made.

Now applying the above rule of interpretation, and giving to this contract its most natural and reasonable construction, we are at once forced to the conclusion that it was the clear intention of all the parties simply to make definite and certain, and to carry out the terms of the verbal contract, and that it was for the use and benefit of Mrs. Church during her lifetime, and that it must enure to the benefit of her heirs after her death.

Mrs. Church, under the verbal contract, was the equitable owner of the lands, and the written agreement being made expressly for her use and benefit, she certainly continued to be the equitable owner. Under the verbal contract, Anderson held the legal title for her, and, under the written contract with Klein and Peale, he still held the legal title for her use and benefit.

Considering it as established that there was no intention in making the written contract to nullify or vary the terms of the parol contract of sale, but rather to render them secure and certain, if Mrs. Church knew of and consented to this written agreement, and Klein swears she did, the only effect it could have, as to Klein and Peale, would be to authorize them to hold the legal title for Mrs. Church and her heirs, after the full payment of the purchase money—in other words, to make them trustees of the legal title. Anderson was to hold this legal title till payment of the purchase money, and they after that event.

If Mrs. Church did not know of, or authorize the written agreement, the effect would be the same. Klein and Peale, by intermeddling, would become trustees *de son tort*, or constructive trustees of the legal title when the full amount of the purchase money should be paid.

This brings us to the consideration of the next point, viz: the conveyance by Anderson to Carroll. What right had Klein and Peale, as the "agents of Mrs. Church," as they style themselves, and as Anderson seems to have regarded them, to order this conveyance? We are not unmindful that the defendants to the original bill, in their answers and in their argument, insist that Anderson, when at Vicksburg in 1855, sold the land to Klein and Peale, because Mrs. Church had forfeited and given up her purchase under the verbal contract, and that they thus acquired the right to sell to Carroll. The evidence fails to sustain this theory, and all the circumstances tend to contradict it.

Pindall et al vs. Trevor & Colgate.

The agreement is made in express terms for the use and benefit of Mrs. Church. If Klein and Peale were purchasing the land for themselves, why should they make use of her name in the agreement, or why subscribe themselves her agents? Conceding that she authorized and assented to the written agreement, we search the instrument in vain to find any power of sale, or other disposition of the land, express or implied, or reserved therein, by or for Klein and Peale, or either of them.

Their "agency," however ample, terminated at the death of Mrs. Church. Anderson only stipulated to convey the legal title to them for Mrs. Church's use and benefit, on full payment to him of the purchase money. Carroll admits, and it is nowhere denied, that he was the brother of Mrs. Church, and her agent at the time the parol contract and sale was made, and that he then knew of the whole transaction, and was fully aware of the trust in favor of Mrs. Church's heirs at the time he took the deed from Anderson, made by direction of Klein and Peale. What title, then, did he acquire by this conveyance to him by Anderson? If it is true that Mrs. Church authorized the written agreement, he could not possibly take more right or title than Klein and Peale had, to wit: the right to hold the legal title, on payment of the purchase money for the use of Mrs. Church, if she were living, and for her heirs after her death.

If, on the other hand, Mrs. Church never knew of, or sanctioned the written agreement, when Anderson made the deed to Carroll who had notice of the equities of the Church heirs, he could only take what Anderson had, after receiving the whole of the purchase money, to-wit: the right or privilege to hold the dry legal title for these heirs.

All the text writers on the subject of trusts state this as the invariable rule. Perry, in his work on trusts, sec. 217, says: "It is a universal rule that if a man purchases property from a

trustee with notice of the trust, he shall be charged with the same trust, in respect to the property, as the trustee from whom he purchased. And even if he pays a valuable consideration, with notice of the equitable rights of a third person, he shall hold the property subject to the equitable interests of such persons." In 2 Washburn, (Real Prop. sec. 21,) the doctrine is laid down in these words: "If one purchase from a trustee with knowledge actual or constructive of the trust, he himself becomes trustee of the property, etc." Very numerous authorities are cited to sustain the rule as expressed by these writers.

But it is claimed that this conveyance was recorded, and that the defendant Randolph, by virtue of his judgment and execution sale acquired the property discharged of the trust and all equities of the Church heirs, because, as he asserts and argues he had no notice of these equities. In short, he claims to be an innocent purchaser without notice.

It is true the judgment was obtained before notice, but between the date of the judgment, November 1st, 1866, and the execution sale, October 26, 1868; this suit was commenced by the Church heirs, to-wit: On the 9th day of October, 1867, and Randolph made a party defendant. The original bill, as first filed, was never dismissed. It was pending on demurrer till October 29th, 1869, when the demurrer was sustained with leave to amend, and it was amended accordingly (see Tr., p. 184,) so that the suit was pending, and thereby actual notice brought home to Randolph and his partners, long before and at the date of the execution sale.

It is almost "elementary law," that a purchaser at execution sale gets only such title as the debtor may have.

Authorities on this point might be multiplied, *ad infinitum.* We content ourselves with reference to but one or two. See

*Carson's Lessee* v. *Boudinot*, 2 Wash., C. C. Rep., 35, and *Hornor* v. *Hanks*, 22 Ark., 572, where this court incidentally announced the doctrine.

In *Watkins and Trapnall* v. *Wassell*, 15 Ark., after full review of authorities, the court said : "We think these ,authorities will sustain the position assumed, that the interest of the creditor in the real estate of the debtor, is limited to the actual interests of the debtor at the time the lien (judgment lien) attaches, etc."

Randolph and his partners (Messrs. Pindall) became the purchasers at the execution sale. Being charged with notice by the pendency of this suit, they clearly fall within the rule in *Byers* v. *Engles*, 16 Ark., 543. This case so often referred to in subsequent opinions of this court, and very recently in *Jackson* v. *Allen & Co., ante*, approved and affirmed, may now be regarded as the settled doctrine of this court, and we think leaves nothing for the purchasers at the execution sale in this case on the score of purchase without notice.

We might be content to rest this branch of the case on the broad principles above indicated and the authorities cited to sustain them; but aside from these we think the defendants have failed, in their pleadings, to place themselves in an attitude of successful defense on the plea of innocent purchasers, because they do not in their answer deny that Carroll had notice of the trust or the equities of the Church heirs.

Though in this case it might not have availed them, as the proof is positive that he did have full notice, yet such denial is essential in such a plea. See *Miller* v. *Fraley*, 21 Ark., p. 22, and authorities there cited.

Another fatal defect in the answer is, that it does not aver that Carroll was ever seized of the land in question. See 2 Dan. ch. Pl. and Pr., 775 ; 3 Sug. on Vendors, 490 ; *Byers et al.* v. *McDonald et al.*, 12 Ark., 286.

Our next consideration must be as to the position occupied by Trevor & Colgate the complainants in the cross bill. Their counsel argue with great earnestness and ingenuity, that though they fully admit the equities of the Church heirs, as against Randolph and other defendants in the original bill, because the deed of trust of which they claim to be the assignees, was executed prior to the commencement of the suit by the Church heirs, they are incumbrancers or purchasers without notice, and have rights superior to those of Randolph, and are entitled to satisfaction of their deed of trust before the Church heirs can take the property. The court below took this view, and sustained their claim to the land in controversy and embraced in the trust deed.

We are clearly of opinion that the Circuit Court erred in allowing this cross bill to be filed, or in not dismissing and striking it from the files, at the hearing, on demurrer reserved in Pindall's and Randolph's answer, for the reason: *First*—That it introduced new parties and new subject matter. It brought in L. A. and X. J. Pindall, who are not parties to the original bill, and introduced litigation in reference to about 1,000 acres of land not mentioned in the original bill.

If a cross bill introduce new and distinct matter no decree can be rendered on it. See 3 Dan. Ch. Pl. and Pr., p. 1743; *Galatian* v. *Erwin*, 1 Hopk., 48; *Daniel* v. *Morrison*, 6 Dana, 186; *May* v. *Armstrong*, 3 J. J. Marshall, 262.

In the case of *Hornor* v. *Hanks*, 22 Ark., 572, this court quotes, with approbation, and, in fact, adopts as its own, and the true doctrine, the language of the court in *May* v. *Armstrong* (3 J. J. Marshall, 262), as follows: "The cross bill must relate exclusively to the subject matter of the bill, and things connected therewith, and foreign matter cannot be introduced unless under special circumstances."

*Second*—The cross complainants, who claim to be the assignees of the Schlessingers, were already represented by 'Johnson, the trustee in the deed of trust, and there is no averment in the cross bill that he was not properly representing his trust.

Johnson was, in every way, competent to protect the interests of the beneficiaries in the trust deed, and the proper party to do so. He is made a defendant in the original suit, and there was no necessity of the intervention of these cross complaints.

Their cross bill has tended greatly and unnecessarily to complicate the case. As is well remarked by one of the eminent counsel, in his brief for defendants, the objects of the cross bill could have as easily been attained after the disposition of the main case between the original parties, when, if Johnson had succeeded, Trevor and Colgate could, by petition with notice to Johnson, have procured an order to have the proceeds of the sale of the land turned over to them."

We do not overlook the fact that the complainants in the cross bill insist that the Code has modified the practise in regard to the introduction of new parties in a cross bill and refer to sec. 108 of the Code.

By a careful examination of this section it will be seen that the privilege of introducing new parties is confined to a cause of action "affecting the subject matter of the action," evidently meaning the original action.

The Code, at all events, makes no change in the old rule, forbidding the introduction of matter foreign to that in litigation in the original bill or complaint.

Newman, in his treatise on Pleading and Practice, under the Code, p. 612, speaking of the cross complaint, says: "The language of the amendment to the Code must no doubt be understood as embracing substantially the same subject matter in this respect that was necessary under the former system," and refers

to *May* v. *Armstrong, sup.*, and then, after a full comparison of the two systems, p. 615, he remarks: "And the rule must not be overlooked that under the former system as well as the present Code Practice the cross petition must be confined to the subject matter of the original petition, or, in the language of the Code of Practice, must affect the subject matter of the action."

This cross bill seeks relief on two grounds:

*First*—That the cross complainants were purchasers without notice, and

*Second*—Because of the inadequacy of the price for which the lands were sold at the execution sale.

We regard the first ground as insufficient, for the reason that, at the time of the assignment to them of the Schlessingers' interest in the deed of trust, May 30th, 1868, the original suit was pending, and Schlessingers and Johnson, the trustees, were parties, and thus had notice. The claim assigned to Trevor and Colgate was overdue, and they were affected with all the equities attaching to it. They could not be placed by the assignment in a better position than Schlessinger was.

The second reason urged, to wit, the inadequacy of the price paid at the execution sale, is of no avail. This court has again and again held that mere inadequacy of price, if unmixed with fraud, does not vitiate a sale under execution. See *Britain* v. *Handy*, 20 Ark., 381; *Randolph et al.* v. *Thomas et al.*, 23 Ark., 69; *Miller* v. *Fraley*, 21 Ark., 22; *Hardy* v. *Heard*, 15 Ark., 184.

Having indicated our decision that the conveyance by Anderson to Carroll was in fraud of the rights of complainants in the original bill, and void, and that the judgment lien of Randolph only attached to such interest as Carroll had in the lands mentioned in the original bill, and the trust deed to Johnson, being subsequent and junior in all respects to the judgment of Randolph,

we conceive, aside from the objections already pointed out to the validity of the cross bill, as against the original complainants, it cannot prevail against the defendant Randolph, as complainants in the cross bill insist.

We would be slow to hold that, under any circumstances, a deed of trust or mortgage, executed by a debtor and recorded months after the rendition of a judgment regularly rendered in the Circuit Court against such debtor, would constitute a lien paramount to the judgment.

With such a doctrine announced any debtor might defy his judgment creditor, and, by keeping his property mortgaged to its full value, forever prevent the enforcement of the judgment lien.

Several points were raised and discussed by counsel, but they are of minor importance, and as those reviewed by us fully determine the merits of this case, we forbear to pass upon them.

On the whole case, therefore, the decree of the Desha Circuit Court is reversed, and we direct that the decree of this court be entered dismissing the cross bill of Trevor and Colgate, annulling and cancelling the deed from Anderson to Carroll, and the deed of trust from Carroll to W. Warren Johnson, and the sheriff's deed to Randolph and Pindalls, so far as the two latter relate to and affect the lands described in the original bill of complaint, and that the title to the said lands be absolutely vested in the complainants in the original bill, the heirs of Maria L. Church, deceased, and their title to the same be forever quieted, and that each of the parties to this suit pay their own costs, both in this court and the court below.