## TURNER v. BURKE.

### Opinion delivered December 31, 1906.

REMOVAL OF CLOUD—LACHES.—A suit to remove a cloud upon the title to land will be barred by laches where the plaintiffs have waited thirty-eight years, and until the land has become much more valuable, before claiming the land or offering to pay the taxes accrued thereon.

Appeal from Phillips Chancery Court. *Edward D. Robertson,* Chancellor; affirmed.

*W. G. Dinning* and *J. W. & M. House,* for appellants.

1. It is admitted that the sale for taxes of 1868 is void. The State acquired no title by virtue of the overdue tax forfeitures under the law of 1881. The commissioner appointed to perform the decree of the court failed to certify to the county clerk the sale of any of the lands involved in this suit to the State, and the latter likewise failed to make a certificate of like purport to the Commissioner of State Lands; and if the certificate had been made, then the owners had two years in which to redeem. 34 Fed. 701; 140 U. S. 634; 55 Ark. 218; 65 Ark. 595; 70 Ark. 326. These provisions are mandatory, and failure to comply with them renders the tax forfeitures void. 66 Ark. 539.

2. Failure to include in the final decree the amounts to be paid to the attorneys, printer and commissioner rendered the decree void. 56 Ark. 419. As to the lands in sections 10 and 23, the decree was void because no amount was fixed in the decree for which the several tracts in these sections were to be sold. 62 Ark. 443; 58 Ark. 39.

3. The defects in the decree could not be cured by a *nunc pro tunc* order purporting to extend the taxes, penalty and costs against the lands. 55 Ark. 36; 65 Ark. 595: The record could have been amended so as to speak the truth only after notice to

the parties against whose interests such corrections were sought to be made.   72 Ark. 185; *ib.* 21; 20 Ark. 636; 23 Ark. 18; 34 Ark. 300; 75 Ark. 12.

4.   The judgment rendered in the attachment suit of W. G. Phillips against the father of appellant was void on its face. Constructive service will not support a personal judgment. 20 Ark. 12; 20 Am. Dec. 179; 50 *id.* 666; 45 Am. Rep. 632; 95 U. S. 714; 119 U. S. 189; 38 Mo. 395.   If if was not a personal judgment, and if the statutes with reference to proceedings upon constructive service had been strictly complied with, still the judgment, not having described therein the lands of the defendant, could have no effect as against any lands except such as were described; and the clerk could not lawfully change the description of the lands after the adjournment of the court.   75 Ark. 420; 71 Ark. 226. The warning order was not indorsed upon the complaint as required by statute, hence the court acquired no jurisdiction.   71 Ark. 318; 70 Ark. 409; 69 Ark. 592; 52 Ark. 312; 51 Ark. 34; 55 Ark. 30.

5.   Mere payment of taxes or mere lapse of time during which the plaintiffs did not bring suit is not evidence of laches or abandonment.   75 Ark. 197; *ib.* 312.   Wild and unoccupied lands are in the constructive possession of the true owners.   74 Ark. 386; 63 Ark. 1.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

1   There is no allegation or proof that the United States ever parted with its title, or that the State had title when it executed its patent to Oscar Turner, under whom appellants claim. They can not ask to quiet their title without alleging and proving a good title in themselves.   47 Miss. 402; 37 Ark. 647.

2.   The deed executed in an overdue tax sale imports a valid sale.   To overturn it, the entire record must be produced, and that must disclose the absence of a valid judgment.   3 Wigmore on Ev. § 2110; 38 Ark. 181; 47 Ark. 120.   On the question as to the failure of the commissioner to certify to the county clerk a list of the lands sold to the State, and the failure of the latter to certify the same to the Commissioner of State Lands, see 74 Ark. 202, which settles the point.   The contention that the decree was void because the allowances to the printer, commissioner and attorney were left blank in the decree is also untenable.   *Id.*

3. The omission in the original decree to extend the tax due on a small part of the lands affected was a clerical misprision only, and was properly corrected by *nunc pro tunc* order. Whether or not notice was given is not disclosed by the record; but if it was necessary the court will presume that it was given. After confirmation, all things are adjudicated in favor of the validity of the sale. Overdue Tax Act, § 15; 74 Ark. 206. But notice was not necessary.    136 Fed. 29; 34 Ark. 301; 40 Ark. 231; 1 Freeman on Judgments, 102.

4. As to the attachment suit: The evidence does not disclose whether the error in description was corrected before or after the record was read and approved by the court; but when interlineations or erasures appear on the face of a record, it will be presumed that they were made at a time when the officer was authorized to make them. 2 Cyc. 242; 117 Ala. 454; 21 N. Y. 539; 12 Ind. 670. Officers are presumed to do their duty, and not to exceed their authority. 9 Pet. 311; 73 Fed. 950. The alteration merely evidences the judgment really pronounced by the court, and such a correction may be made at any time and without notice. *Supra;* 33 Ark. 220. See also 59 Ark. 558; 68 Ark. 345; 1 Freeman on Judgments, 38, 46, 47; 77 Cal. 220; 44 N. Y. 376; 10 Ia. 398. That the warning order was not indorsed on the complaint is not jurisdictional matter, and does not subject the judgment to collateral attack. 72 Ark. 106; 73 Ark. 32; 74 Ark. 181. The recital in the judgment that the defendant had been cited by warning order published as required by law is evidence of the fact, and settles the question of jurisdiction. Kirby's Digest, § 4425; 72 Ark. 265; 57 Ark. 49. A court of equity will not set aside a void judgment unless a meritorious defense is shown, or where the judgment does substantial justice. 50 Ark. 458; 52 Ark. 80; 72 Ark. 106; 51 Ark 344.

5. Appellant is barred under the doctrine of laches. Equity will not entertain a claim of parties to lands who have for over a generation evaded payment of taxes due the State thereon and disregarded the interests of others asserting *bona fide* claims to the lands. Unreasonable delay alone, in the absence of fraud, bars the claim to equitable relief. 72 Ark. 106; 18 Cyc. 120; 190 U. S. 538; 139 U. S. 384; 150 U. S. 201.

*W. G. Dinning* and *J. W. & M. House,* for appellant in reply.

1.  This court will take judicial knowledge of the acts of Congress granting swamp lands to the State, and those taken in connection with the patent from the State make complete claim of title.   13 N. Y. Supp. 493; 19 N. E. 752; 47 How. Prac. Rep. 424.

2.  The *nunc pro tunc* order itself is fatally defective because it is impossible to determine what the figures extended opposite the several tracts of land mean, whether dollars or cents—nothing showing the amount for which any tract sold.   26 Minn. 201; 76 Am. Dec. 709; 30 Cal. 619; 1 Wall. 398; 71 Am. Dec. 275; 46 Tenn. 400; 2 Utah, 114; 3 Fed. Cas. 1093.

3.  It is not laches for the owner of a legal title to fail to assert his rights therein until the legal title is assailed in a court of chancery.   126 Fed. 46.   The doctrine of laches does not apply where the suit is for land, and the adverse claimant is not in actual possession thereof.   46 S. E. 603.   See also 76 Ark. 525.

HILL, C. J.   In 1859 Oscar Turner, the first of the name in this record, purchased of the State the land in controversy, a tract of nearly two thousand acres of wild and unoccupied lands. It is alleged that the State conveyed it under the swamp land act, and for the purpose of this case it may be taken that it was properly selected and listed to the State as swamp lands under the act of Congress.   Oscar Turner, the first, conveyed to Oscar Turner, Jr., his son, who was for a time a member of Congress from Kentucky, and was in Washington during the time the judgment hereinafter referred to was rendered against him.   This Oscar Turner died in 1902, and by will left his property to the appellants, his wife and infant son, Oscar Turner, the third.   This was a suit to remove the clouds from the title and to quiet it in appellants, who were plaintiffs in the chancery court, and was brought in 1904.   Plaintiffs offered to pay taxes and interest thereon, and attacked the overdue tax decrees upon which defendant's titles rested.   The bill was dismissed, and the plaintiffs brought the case here.   The Turners did not pay any taxes at any time since 1859, and the land was forfeited for taxes a few years after the war.   Like most tax sales at that time they were void, but there is no evidence that the taxes were illegal.   All of the lands were sold under overdue tax decrees in 1883. Some of of it was sold to parties at said sales, and various defendants,

claiming several of the tracts in controversy, deraign the title directly to the purchase at such sales. Much of the land in controversy was not sold to individuals under the overdue tax decrees, but was struck off to the State, and different tracts were purchased from the State by the various defendants. These purchases ranged from 1891 to 1902. All the tracts passed through the overdue tax decrees of 1883, and the only difference in them is some of the defendants deraign directly through the sales, and others through the State, the State's title resting on the overdue tax decrees.

About 1897 Oscar Turner, Jr., entered into a contract with S. E. Crowder, of Louisville, Ky., under which Crowder was authorized to represent his interests in these lands and clear the title for him, and to receive fifty per cent. of the land recovered; Crowder to pay redemption charges and expenses. Crowder came to Phillips County, and investigated the situation, and found out the facts about the titles and the character of the land, and ascertained the cost of redemption. He employed counsel in these matters, and had him call upon several darkies, who had donated some of the Turner lands from the State, looking towards a settlement with them. No payment of taxes or redemptions were made. Later Turner himself came and investigated the situation—this was in 1898—and decided that the lands were not worth the cost of redemption. In 1900 Mr Phillips, the attorney employed by Crowder, and with whom Turner had consulted, sued him for a fee, and attached all the land in controversy except a half section.

This suit proceeded to judgment, and most, if not all, the defendants have procured title from that sale, doubtless intending to fatten the title based upon the overdue tax decrees.

The evidence shows that up to 1899 the land was of little value, but since that time has rapidly risen in value, and at the institution of this suit was worth about $15 per acre. Just how much they were worth per acre when Oscar Turner, Jr., died in July, 1902, is not shown exactly, but it is shown that the rise was rapid after 1899, which made them worth many hundred per cent. more than when he decided not to redeem them in 1898. He had notice of the attachment suit against him in 1900. He was then a member of Congress, and a copy of the judgment was

served upon him in Washington, but he declined to attend to it on account of an error of description of the land as shown in the copy served upon him. The gravamen of this bill is an attack upon the overdue tax decrees and upon the judgment in the attachment suit.

To sustain appellant's title, the overdue tax decrees must be held void, and as to most of the land also the judgment in the attachment suit must be declared void. The court, however, declines to go into the investigation of the grounds of the attack on the overdue tax decrees, and it is not necessary to notice the attachment suit, as it is but a second hurdle for appellants to cross, and they have fallen before the first one is reached.

The laches of the Turners, father and son, not including the infant of the third generation, barred these appellants of relief in equity. To escape laches, appellants appeal to *Jackson* v. *Boyd,* 75 Ark. 197, *Williams* v. *Bennett,* 75 Ark. 312, and *Rozelle* v. *Chicago Mill & Lumber Co.,* 76 Ark. 525. In *Jackson* v. *Boyd* there was no evidence of increased value of the land, no change in the status of any one towards the land, no evidence of an abandonment because of insufficient value to assume the burdens against it; and it was pointed out that the absence of these or any other grounds causing the doctrine of laches to be invoked prevented the application in that case after a lapse of thirteen years. In *Williams* v. *Bennett, supra,* the doctrine of *Jackson* v. *Boyd* was reiterated, and it was held inapplicable where some of the well-known equitable causes for its invocation were present, and held the parties barred under such circumstances after a lapse of 35 years, during which time papers which were supposed to support a decree were lost. *Rozelle* v. *Chicago Mill & Lumber Company* merely decides that on a demurrer a complaint seeking to cancel a deed to wild and unoccupied land is not bad for failing to allege reasons for the delay where it did not appear that the rights of the defendants were prejudiced thereby. Here the defendants are prejudiced because the taxes refunded with interest do not meet the justice of the case, as it did in *Jackson* v. *Boyd*. The principles of these cases are against appellants, and *Clay* v. *Bilby,* 72 Ark. 101, is directly against them, where the following statement is as applicable to this case as to that: "The appellants failed to show that they had any merito-

rious defense in the suit instituted under the overdue tax act. They do not allege that the taxes for which the land was sold were illegal or paid. Not a single ground for equitable interposition appears. *State* v. *Hill,* 50 Ark. 458. Without one palliating excuse, they show themselves guilty of the grossest negligence. They knew their land was subject to taxation, and liable to be sold if the taxes were not paid, yet they waited thirty-eight years before they offered to pay taxes. There is nothing in their case "to call forth a court of equity into activity." Counsel point to the well known condition of civil war prevailing from 1861 to 1865, and say that the troublesome times extending thereafter until 1874 should be also treated as a period when the performance of duties to civil government should be excused. If both these periods be excluded, it does not help appellants, for there is no excuse offered for omitting duties to the State after 1874, and all of this land could have been redeemed until after the overdue tax decrees in 1883, and much of it thereafter from the State, and this suit could have been brought in 1883 as well as in 1904. But the Turners have not contributed one mill to sustain the State and county governments at any time. Oscar Turner, Jr., was acquainted with the situation, and from his service in Congress was doubtless familiar with the general condition and in touch with Representatives from the section where his land was located. He concluded that the lands were not worth their tribute to the State, but the appellees had more faith in their future and discharged the duty of landowners to the State, and whose equity is the stronger? The statement of the case answers it. The appellants are seeking to reap where they have not sown, and to gather where they have not strawed, and this is not the first time such conduct has caused loss. Matt. 25, 15-30.

Mr. Justice Brewer, speaking for the Supreme Court of the United States in *Underwood* v. *Dugan,* 139 U. S. 380, so aptly described the very situation here and the equitable viewpoint thereof that it is adopted as controlling:

"And this doctrine of laches rests on no arbitrary or technical rule. It is founded on the plainest principles of substantial justice. Ownership of property implies two things: First, attention to it; second, a discharge of all obligations, of taxation or

otherwise, to the State which protects it. When it appears that one who now asserts a title to property, arising more than the lifetime of a generation ago, has during all these years neglected the property and made no claim of title thereto, a reasonable presumption is that, whatever may be apparent on the face of the instrument supposed to create the title, were the full facts known, facts which can not now be known by reason of the death of the parties to the transaction, it would be disclosed that no title was in fact obtained; or, if that be not true, that he considered the property of such little value that he abandoned it to the State which was protecting it. So, if, the title being beyond challenge, during these years he pays no taxes thereon, makes no effort to improve or increase its value, and, by the labor and efforts of others, under the protecting powers of the State, large value has been given to to it, the State may properly say to him, as may also the individuals who have thus wrought this change in value: You abandoned this property when it was comparatively valueless; you have taken no share in the burdens of taxation or the support of the State; others have toiled, paid taxes, and made the property valuable; therefore, because of your shirking of the duties and obligations, you shall not, whatever may have been the nature of your title in the first instance, be permitted to appropriate the value thus produced by others."

For these reasons the court declines to investigate the matters urged to avoid the overdue tax decrees of 1883.

Judgment affirmed.

Mr. Justice McCULLOCH disqualified and not participating.