## LaCOTTS *v.* LaCOTTS.

### Opinion delivered July 14, 1913.

1. TRUSTS—CONSTRUCTIVE TRUST—AGREEMENT TO PURCHASE—"TRUST EX MALEFICIO.—Under a promise to buy in land for the owner at a judicial sale, and hold the same in trust for him, a failure to perform the latter promise, does not create a *"trust ex maleficio,"* when there is no evidence of fraud on the part of the purchaser. (Page 337.)

2. MORTGAGES—DEED AS A MORTGAGE—ORAL EVIDENCE.—Where appellant purchased land at a judicial sale under a promise to hold the same as security for the purchase money, such transaction constitutes an equitable mortgage, and the agreement not being within the statutes of fraud may be proven by oral testimony. (Page 339.)

3. MORTGAGES—DEED ABSOLUTE ON FACE—PROOF.—In order to convert a deed absolute on its face into a mortgage, the proof must be clear, unequivocal and convincing. (Page 340.)

Appeal from Arkansas Chancery Court; *John M. Elliott,* Chancellor; reversed.

*R. D. Rasco,* for appellant.

1. The evidence is not sufficient to show a constructive trust. In order to graft a trust upon a valid writ-

ten instrument, the evidence must be clear, positive and convincing. 39 Cyc. 84, and notes; 44 Ark. 365; 11 Ark. 82; 4 Am. Dec. 661; 3 Kerr on Real Prop., §§ 1720, 1726; 42 Am. Dec. 521; 13 *Id.* 133; 89 Ark. 182; 163 Ill. 557, 43 N. E. 170; 76 Cal. 469, 9 Am. St. Rep. 242, 18 Pac. 429; 66 Conn. 493, 34 Atl. 490.

2.   Appellee does not allege in his answer, and cross complaint, and the proof does not establish, facts sufficient to constitute a trust *ex maleficio.* A mere verbal promise to convey real estate, coupled with the breach of that promise, is not sufficient to establish this kind of a trust.   101 Ark. 451; 19 Ark. 39; 73 Ark. 310, 313; 41 Ark. 393; 9 L. R. A. 287; 11 L. R. A. 381; Pomeroy, Eq. (3 ed.), §§ 1053, 1054, 1055, 1056, and foot note; 39 L. R. A. (N. S.) 906.

3.   When a parent causes title to real estate to be taken in the name of his child, the law presumes that he meant it as an advancement, and no trust will arise. Hence, even if appellee could show that the money which paid for the land was his, as he claims, the presumption is that he intended it as an advancement, and no trust can be declared.   10 Humph. 12; 3 Pomeroy 1039; *Id.* 1040; 41 Ark. 301; 45 Ark. 481, 482; 71 Ark. 372; 2 L. R. A. 815.

4.   The agreement alleged by appellee, if made, is void as against the statute of fraud, because the same was not in writing.   Kirby's Dig., § 3666; 50 Ark. 71; 41 Ark. 481; 42 Ark. 503; 57 Ark. 632; 96 Ark. 98; 68 Am. Dec. 455; 14 *Id.* 275; 95 *Id.* 685; 40 *Id.* 207; 39 Cyc. 49; 70 Ark. 145; 45 Ark. 481; 27 Am. Dec. 308.

*W. N. Carpenter* and *J. M. Brice,* for appellee.

McCulloch, C. J.   This case involves a controversy between father and son over the title to a quarter-section of land in Arkansas County, where appellant and appellee both reside.

The tract of land was originally owned by appellee, John A. LaCotts, and was sold by a commissioner of the chancery court of Arkansas County in the year 1906, pur-

suant to a decree of that court in favor of I. C. Gibson
against appellee.

Appellant purchased the land at the sale, and the
commissioner conveyed it to him, the deed being ap-
proved by the court and duly recorded.

The land was adapted to the culture of rice, and ap-
pellant converted it into a rice farm, expending about
$5,000 in putting down a deep well and installing ma-
chinery, erecting sheds, etc.

Appellee claims that appellant purchased the land
at the sale at his (appellee's) request, and pursuant to
an agreement between them to the effect that appellant
would buy the land as an accommodation, for the purpose
of discharging the lien of the decree, and that he would
hold the title in trust for appellee and reconvey the same
on repayment of the price paid. He seeks, in this proceed-
ing, to have appellant declared to be a trustee holding
the title to the land in trust for him, and the chancellor
sustained his contention and rendered a decree in his
favor.

The court appointed a master to ascertain the value
of the improvements placed on the land by appellant, and
the rents and profits which had been enjoyed by him, and
decreed a lien in appellant's favor for the amount due for
improvements and taxes in excess of the rents and
profits. The master found that the value of the im-
provements placed on the land by appellant amounted to
$6,714.88, and that he was entitled to recover the sum of
$2,224.88, the amount over and above the rents and
profits received.

The learned chancellor filed a written opinion, in
which he decided that appellant should be held as a trus-
tee on account of his own wrong. He based his conclu-
sion on the opinion of this court in the case of *Ammonett*
v. *Black,* 73 Ark. 310.

We are of the opinion, that, according to the proof
adduced, this case does not contain any elements of a
trust *ex maleficio,* for the reason that the proof does not

show that appellant procured the title by the commission of any fraud. Putting it in the strongest light, the testimony adduced by appellee only tends to establish a promise. on the part of appellant to purchase the land and hold it for appellee, and a breach of that promise. This alone is not sufficient to establish a trust *ex maleficio*. *Spradling* v. *Spradling,* 101 Ark. 451.

Judge RIDDICK, in delivering the opinion of the court in *Ammonette* v. *Black, supra,* after quoting from Professor Pomeroy concerning what constitutes a trust *ex maleficio,* said:

"There must, of course, in such cases, be an element of positive fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statutes of fraud would apply."

Appellee testified that when the land was advertised for sale, he applied to his son, John, to see if he would buy the land in. John replied, saying that he would do so, but that his brother, George (appellant), had more money than he, and that probably he would buy the land in. Appellee testified that subsequently he saw his two sons, appellant and John, standing on the street, and when he walked up to them, John remarked that George would attend to the matter for him, meaning to buy in the land, and that in reply he merely admonished them not to neglect it.

The evidence shows that appellant, after purchasing the land, took possession of it and made valuable improvements thereon without any objection from appellee until a short time before the suit was instituted.

Appellee formerly owned several thousand acres of land, and still owns about a thousand acres. On several occasions, when tracts of land which he owned were sold under execution or other process, his son, George, purchased them at his request, and he never made any objections to his purchase of any tract except this one.

Our conclusion is, that appellee has failed to establish a state of facts which would convert appellant's acquisition of the property into a trust *ex maleficio,* and

that the decision of the chancellor was not correct in holding that such a trust had been established by the evidence.

Nor is the evidence sufficient to prove that the purchase of the land by appellant was intended as a mortgage or as security for the amount paid out in satisfaction of the decree. If the proof was sufficient to establish such agreement, no rule of evidence would be violated in admitting it for the purpose of showing that the title was acquired as security for money advanced; nor would the agreement be within the statutes of fraud, for, under those circumstances, the result would be the same as if the appellee, instead of allowing appellant to become purchaser at the commissioner's sale, in order to get title to the land as security for the money paid, had conveyed the land directly to appellant himself as security for the money advanced. In either event, the conveyance could, in equity, be shown to have been intended as a mortgage. But, in order to convert a deed absolute on its face into a mortgage, the proof must be "clear, unequivocal and convincing." *Rushton* v. *McIllvene,* 88 Ark. 299. We think the proof in this case falls far short of the degree of force necessary to show that the conveyance was intended as a mortgage. The proof in the case consists of appellee and his son, John LaCotts, on one side, and appellant, in his own behalf, on the other side. Appellee and his son, John, testified concerning the same transactions, but the fact that their testimony conflicts upon material details of the transaction leaves it far from convincing. For instance, appellee, in his account of the main transaction, states that, when he received word from his son, John, that the land was advertised for sale, the latter expressed a willingness to buy the land in himself, but suggested that appellant should do that, as he had more money, and advised that appellant be interviewed on the subject; that subsequently, he met his two sons on the street, and one of them called to him, and when he walked up to the pair, John remarked that George (appellant) said that he would at-

tend to it. Now, John testified that, when he told his father about the land being advertised for sale, his father said that he had already talked with George about it, and that he told his father that if George was willing to buy it in, to let him go ahead and do it, and that a short time thereafter he found his father and George standing on the street, and that George then told him that he need not trouble himself any more about the purchase, as he (George) would attend to it. Appellant denies that any such agreement was made, but, on the contrary, testified that his father had told him that if he cared to buy the land at the sale, he could have it just as he had done on other occasions, when he had bought in land of his father when sold under process.

Appellant's verison of the affair, as against that given by appellee and his son, John, is strengthened by the subsequent transactions between them. As before stated, appellant put valuable improvements on the land, and no objections were raised by his father. He converted the land into a rice farm, which was in the immediate neighborhood of appellee's home.

The proof shows that appellant entered into some sort of partnership arrangement with his brother, John, who agreed to pay him rent on the land, all of which goes to weaken the force of John's testimony, for he entered into such an agreement notwithstanding the fact that he claims that he knew his brother, George, did not own the land, and merely bought it in as an accommodation to his father.

Appellee admitted, on his cross examination, that he was perfectly willing for appellant and his other sons to buy this land in and take an absolute title thereto, but he says that his only objection was to appellant alone getting title to it, that he was willing to give it to all four of them, but not to any particular one of them.

The fact that appellant was permitted, without objection, to place valuable improvements on the land, and that his brother dealt with him concerning it as his own land, goes far, as before stated, to strengthen his claim

that there was no agreement that he was to acquire the title otherwise than as an absolute purchase.

We are of the opinion that upon no theory can the appellee's claim to restoration of title be sustained. The decree of the chancellor is therefore reversed, and the cause is remanded with directions to enter a decree in appellant's favor.