USSERY v. USSERY.

Opinion delivered May 4, 1914.

1. TRUSTS—EXPRESS TRUSTS—PAROL EVIDENCE TO ESTABLISH.—An agreement which constitutes an express trust can not be engrafted by parol testimony upon a written deed of conveyance. (Page 39.)

2. TRUSTS—CONSTRUCTIVE TRUSTS—WRONGFUL ACTS—EQUITY JURISDICTION.—Where the legal title to property is obtained in such a way that it would be unconscionable for the holder thereof to retain and enjoy the beneficial interest, equity will impress a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, and equity has jurisdiction to reach the property, until it passes into the hands of a purchaser for value without notice. (Page 39.)

3. TRUSTS EX MALEFICIO—POSITIVE FRAUD—STATUTE OF FRAUDS.—In order to raise a trust ex maleficio in land, the holder of the same must have acquired it with some element of positive fraud, and a mere parol promise is insufficient, as the statute of frauds would apply. (Page 40.)

Appeal from Garland Chancery Court; J. P. Henderson, Chancellor; reversed.

A. Curl, for appellants.

An express trust can only be created in writing. 3 Pomeroy's Equity (3 ed.), § 1006; 26 Ark. 240-429; 8 Words & Phrases, 7121, 7122.

There is nothing in the relation of the parties that would authorize the inference that a trust was intended, or from which it could be implied. Appellee is a stranger in blood to Foster, who caused the deed to be made to her husband, and there was no privity of contract or

blood between her and Robins, the grantor therein.   39 Cyc. 24, 25.

Parol evidence of a constructive trust must not only be clear and satisfactory, but also of so positive a character as to leave no doubt of the fact.   75 Ark. 446; 105 Ark. 318.

*M. S. Cobb,* for appellee.

The evidence clearly establishes a resulting trust. 39 Cyc. 26; 152 Ala. 375; 121 S. W. 1002; 176 Atl. 164. Such a trust may be proved by parol.   40 Ark. 62.   Resulting trusts are expressly excluded from the operation of the statute of frauds.   Kirby's Dig., § 3667; 70 Ark. 145; 61 Ark. 575; 73 Ark. 310; 100 Ark. 361.

McCulloch, C. J.   This is an action instituted on March 7, 1913, in the chancery court of Garland County by Stella Ussery against her husband, J. M. Ussery, to enforce an alleged trust in her favor under a deed executed by one Robbins to said J. M. Ussery, dated November 27, 1908, conveying a tract of eighty acres of land situated in Garland County.

Defendant J. M. Ussery executed to his codefendant Curl a deed, conveying the land in controversy, about the time of the institution of this action, and the latter was also made a party defendant.

The answer contains a denial of all the allegations of the complaint with respect to the consideration for the deed from Robbins to J. M. Ussery, and alleges that Ussery paid a valuable consideration for said conveyance.

The allegations of the complaint are that on the date mentioned plaintiff's stepfather, Charles Foster, purchased the land in controversy from Robbins and caused the deed of conveyance to be executed by Robbins to plaintiff's husband, J. M. Ussery; that Foster paid the consideration for the conveyance and that "he had the deed made to James Ussery, the defendant herein, to hold in trust for the sole use and benefit of plaintiff."

The allegations of the complaint are not sufficient to take the case out of the operation of the statute of frauds, for, at most, the alleged agreement constitutes an express trust, which can not be engrafted by parol testimony upon a written deed of conveyance. *Spradling* v. *Spradling,* 101 Ark. 451.

There was an attempt, however, to bring the case within the principles upon which a trust *ex maleficio* may be declared.

Plaintiff and defendant had been married many years before this transaction occurred, and had children, the issue of their marriage. They had up to that time lived together happily so far as this record reflects the facts. Plaintiff was in ill health, being subject to epileptic fits, and they lived in the neighborhood of their mother, who was the wife of Charles Foster, the purchaser of the land from Robbins.

Defendant J. M. Ussery testified that at the request of Foster he negotiated the purchase of a quarter-section of land from Robbins, of which the eighty acres in controversy was a part, and that in consideration of his services in negotiating the purchase at a very low price Foster agreed to have the eighty acres in controversy conveyed to him.

The chancellor found against defendant Ussery on that point, however, and we accept those findings as correct.

Foster testified that he purchased the quarter-section of land from Robbins, and, desiring to contribute something to the support of his stepdaughter and her children, he caused the conveyance of the eighty acres in controversy to be made to J. M. Ussery. He testified that there was no agreement with Ussery at all with reference to the land, that he voluntarily had the conveyance made to the latter "to help Stella and him raise their children. I always wanted to help Stella and her children all I could." He stated that J. M. Ussery was not even present when the deed was executed, but that he subsequently delivered it to Ussery.

Mrs. Foster testified that there was an understanding or agreement that defendant and his wife should move on the land and build a house and that she (witness) and Foster would move to an adjoining tract so that they could all be near each other.

The Usserys never moved on the land, and within less than a year after the execution of the deed defendant Ussery began to neglect his wife, and finally deserted her, leaving her in a helpless condition.

However reprehensible the conduct of Ussery was, we find nothing in the state of facts with reference to the execution of this conveyance which would warrant the court in declaring the existence of a trust *ex maleficio.*

The elements constituting that character of trust are stated by Mr. Pomeroy in language approved by this court, as follows:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, -although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrong-doer or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrong-doer." 3 Pomeroy's Equity Jurisprudence, p. 2033; *Ammonette* v. *Black,* 73 Ark. 310; *Bragg* v. *Hart-*

*ney,* 92 Ark. 55; *Spradling* v. *Spradling, supra; LaCotts* v. *LaCotts,* 109 Ark. 335.

Foster, the purchaser of the land, testified that no agreement at all was made with Ussery and that the conveyance was entirely voluntary.

Mrs. Foster testified that there was an agreement or understanding that Ussery would move on the place and build a house; but, at most, that testimony, even if it be accepted as the facts of this case, only constituted a promise and violation thereof without any element of positive fraud. With respect to that state of facts we have said:

"There must, of course, in such cases be an element of positive fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply." *Ammonette* v. *Black, supra.*

We are, therefore, of the opinion that, when the testimony is viewed in the light most favorable to the plaintiff, it fails entirely to make a case which would warrant the declaration of a trust in her favor. The chancellor reached an erroneous conclusion in applying the law to the facts as found by him, and the decree is therefore reversed and the cause remanded with directions to dismiss the complaint for want of equity.