## PHARR v. FINK.

### Opinion delivered January 16, 1922.

1. FRAUDS, STATUTE OF—TRUSTS.—When a trust arises from an agreement between the parties or from the declarations of the beneficial owner of the property made to establish the trust, it is within the statute of frauds and must be proved by writing, in the absence of fraud or imposition.

2. FRAUDS, STATUTE OF—TRUST—PLEADING.—A complaint which in effect alleges that a deed was executed to one as trustee under a verbal agreement that the grantee would clear up the title, sell the land and divide the profits with the grantors, alleges an express trust within the statute of frauds.

3. TRUSTS EX MALEFICIO—WHEN ENFORCED.—Whenever the legal title to property, real or personal, has been obtained through fraud or duress, or under circumstances which render it inequitable for the holder of the legal title to retain and enjoy the beneficial interest, equity imposes a constructive trust in favor of the one equitably entitled to the same as against the original wrongdoer or any subsequent holder until a purchaser in good faith acquires the title.

4. TRUST—EX MALEFICIO—BREACH OF ORAL AGREEMENT.—The mere breach of an oral agreement, standing alone, is not sufficient to establish that fraud in proving the title which is requisite to render the grantee a trustee ex maleficio, although the fact of such breach may be looked to with other circumstances as constituting a link in a chain of facts going to prove fraud.

5. TRUST EX MALEFICIO—FRAUD.—One familiar with the conditions concerning the title to lands represented to the owners, who were not familiar with such conditions, that the titles were beclouded

and that he would clear up the titles, pay the taxes and sell the lands for a price satisfactory to the owners, but, after procuring a deed from the owners, he sold the lands without clearing up the title or paying the taxes, and without consulting the owners or dividing the consideration received. *Held* that he was a trustee *ex maleficio.*

6. FRAUD—BONA FIDE PURCHASER.—A conveyance of lands to one "as trustee and unto his successors" is sufficient to indicate that the property is held by the grantee in trust and to impose upon a purchaser from the grantee the duty of ascertaining the nature of the trust.

7. LACHES—PAYMENT OF TAXES.—The fact that the beneficiaries of a trust permitted a purchaser from the trustee to pay taxes on the trust lands for less than seven years did not constitute such laches on their part as will debar them from recovering the lands.

8. TRUSTS—RIGHTS AND LIABILITIES OF PURCHASER OF TRUST PROPERTY.—A purchaser of trust property from the trustee in violation of the trust and with notice thereof is liable, upon the sale being set aside, for the rents and profits of the property while in his possession, but should be allowed credit or reimbursement for sums which he has paid in good faith for taxes, to remove incumbrances, or in making improvements on the property.

Appeal from Prairie Chancery Court, Northern District; *John M. Elliott,* Chancellor; reversed.

*Emmett Vaughan,* for appellant.

The relation of trustee and *cestui que trust* existed between appellant and Dowdy. 117 N. E. 406.

The deed having been made to a trustee and to his *successors,* any one who deals with the trust property, with that notice written upon the face of the deed, does so at his peril. Where the purchase money is paid by one and the title to land taken in another, a trust results by operation of law to the one who pays the money, and parol testimony is admissible to establish the nature and extent of the trust. 13 Enc. Ev. p. 137; 9 Ark. 518; 45 Ark. 472; 76 Ark. 615; 200 S. W. 1029; 98 Ark. 452; 118 Ark. 146; 105 Ark. 323; 70 Ark. 145; 27 S. E. 836; 44 S. W. 467.

Where the purchaser from a trustee has full means of acquiring complete knowledge of the title, he will be deemed to have constructive notice thereof. 3 How. (U. S.) 333; 95 U. S. 576; 15 Wall. 165; 17 How. 232; 2 Wall. 70.

The statute of frauds does not apply to resulting trusts in land where money is furnished by one and title taken in another. 102 A. 817; 35 So. 262; 70 Ark. 145.

Dowdy could sell only the legal title, and the deed to him was notice on its face that another held the equitable title. The recording of the deed by Fink was only constructive notice of the breach of trust by Dowdy. Actual notice of the breach must be brought to the *cestui que trust,* especially in the case of nonresidents. 96 N. W. 349; 64 Kan. 689; 25 Cyc. 1173. When the relation of trustee and *cestui que trust* is once established, no subsequent dealing with the trust property by the trustee can alter the relation or relieve the property of its trust character. 23 W. Va. 475; 27 S. E. 836; 44 S. W. 470; 200 S. W. 1029.

Where the trust, though a resulting one, is cognizable solely in equity, the time for bringing suit will not begin to run until the trust has been repudiated. 1 Cyc. 1066. Appellee has held neither the actual nor constructive possession for the statutory period. 23 Ark. 362.

Persons coming into possession of trust property, with notice of trust, shall be considered trustees. 1 Pet. 229; 102 U. S. 545; 15 Wall. 165; 104 U. S. 54; 10 How. 174; 39 Cyc. 548; 8 Wheat. 421; 129 U. S. 305; 101 U. S. 320; 30 Ark. 249.

The *cestui que trust* has a right to follow the property into whose hands he may find it, unless such purchaser is a *bona fide* purchaser for a valuable consideration, without notice. 146 U. S. 363; 9 Wall. 365; 19 How. 289; 8 Wall. 202-215.

The defense of laches is not available to appellee, for to urge that is but attack the source of his own title. Nor is the statute of frauds available.

*W. A. Leach,* for appellee.

The mere execution of a deed by one party to another for an expressed consideration, which was not paid, does not give rise to a resulting trust. 114 Ark. 128; 50 Ark. 76; 57 Ark. 632. A resulting trust must arise by operation of law, while express trusts arise by act or agreement of the parties. Express trusts are within the statute of frauds, and must be proved by writing in the absence of fraud or imposition. 103 Ark. 145; 101 Ark. 460; 100 Ark. 261; 70 Ark. 145; 67 Ark. 526; C. & M. Digest, § 4868. No fraud was shown by Dowdy in the procurement of the deed, and no confidential relations existing, a trust *ex maleficio* did not arise. 26 R. C. L. 1197, sec. 32; 26 R. C. L. 1239, sec. 85; 72 Ark. 313. The transaction amounted to an express trust, and therefore within the statute of frauds, and must be proved by some instrument in writing. Parol evidence cannot supply the omission. 17 Cyc. 748; 28 S. W. (Mo.) 171; 16 Ark. 340; 56 Ark. 139; 47 Ark. 17. A contract required by the statute of frauds to be in writing cannot be partly written and partly oral. 39 Cyc. 53; Pomeroy's Equity § 1009; 26 R. C. L. 34; 53 L. R. A. 753; 34 Am. St. Rep. 358; 167 S. W. (Mo.) 447; 9 Am. Dec. 236; Perry on Trusts, §§ 79 and 80.

The use of the word "trustee" is not sufficient to establish express trust in lands, and will not permit the introduction of parol evidence. 40 Am. St. 299; 66 N. E. 494; 115 Ga. 874; 92 Ga. 260; 13 S. D. 453; 35 N. E. (Ill.) 216.

The filing of the deed for record, by appellee, was constructive notice of the repudiation by the trustee of his trust, and failure thereafter for ten years to assert his rights would bar the appellant from recovery. 26 R. C. L. § 152 p. 1299.

Appellee should be reimbursed for taxes and improvements. 39 Cyc. 643; 84 Ark. 160.

Wood, J.   This action was instituted by the appellant against the appellee to cancel the deed executed by one P. P. Dowdy to the appellee.   The facts are substantially as follows:

The appellant inherited the lands described in the deed from his father, Henry Pharr.   Dowdy was an abstracter of titles and, finding that the Pharr heirs owned the lands but that the title was clouded by some delinquent tax sales which he considered voidable, he induced the Pharr heirs to execute to him a quitclaim deed to the lands.   The understanding between the parties at the time of the execution of the deed was that Dowdy would clear up the title to the lands, and in the event of a sale of the same would divide the profits with the Pharr heirs.   The deed expressed that "for and in consideration of the sum of $1 in hand paid by P. P. Dowdy, trustee," the heirs of Pharr "quit-claimed and conveyed unto the said P. P. Dowdy, trustee, all our right, title and interest in the lands, describing them."   The *habendum* clause in the deed is as follows: "To have and to hold the same unto the said P. P. Dowdy, trustee, and unto his successors and assigns the said lands, together with all and singular the improvements thereunto belonging."   It was understood at the time of the execution of the deed that, should an opportunity arise to sell, the appellant was to be consulted, and he and Dowdy were to agree upon the terms before the sale was consummated. Dowdy was to pay all expenses and all taxes, and, after these were deducted from the purchase price of the land sold, the balance was to be divided equally between Dowdy and appellant.

On the 11th day of August, 1908, Dowdy sold the lands in controversy to the appellee for the sum of $25.   Dowdy did not clear up the tax titles, but on the contrary failed to pay taxes on the lands after they were deeded to him, and the same were sold to R. P. Smith and W. R. Banks, who paid the taxes for a number of years.   The appellee himself was an abstracter

of titles, and found that Dowdy had no title to the land
which he thought was a better title than Banks' tax
title. He had had some business transactions with
Banks that were not satisfactory, and he concluded he
would buy Dowdy's title, which would give him a better
title than Banks had. He therefore bought the land
from Dowdy for the sum of $25. He knew at the
time of his purchase from Dowdy of the deed from
Pharr to Dowdy. At the time of the purchase he be-
lieved that he was getting the only title to the land that
was any good. The appellee took possession of the
land in 1916 and made valuable improvements thereon,
which he itemized, and which amounted in the aggregate
to the sum of $664; and paid the taxes on the land for
fourteen years.

The appellee, in his answer, after denying that ap-
pellant had title to the lands, pleaded the statute of
frauds and also the statute of limitations and laches.
Upon the issues thus raised and the facts as above
developed the court rendered a decree dismissing the
appellant's complaint for want of equity, from which
is this appeal.

1. Under our statutes trusts concerning lands that
are created by contract or agreement between the par-
ties are express trusts, which can only be proved by
some writing signed by the party who is or shall be by
law enabled to declare such trust. Sec. 4867, C. &. M.
Digest. Trusts concerning lands which are not created
by contract or agreement between the parties, but which
arise or result by operation of law when the lands are
conveyed, are implied trusts which may be established
by parol evidence. Sec. 4868, C. & M. Digest. In
*Spradling* v. *Spradling,* 101 Ark. 451-460, we said:
"When a trust arises from an agreement between the
parties or from the declarations of the beneficial owner
of the property made to establish a trust, it is within
the statute of frauds and must be proved by writing, in
the absence of fraud or imposition." In addition to

the cases there cited see *U. S. Fidelity & Guaranty Co.* v. *Smith,* 103 Ark. 145-149; *Hunter* v. *Field,* 114 Ark. 128.

Now, the complaint alleged that "one P. P. Dowdy, a real estate and abstract man, entered into a verbal contract with him (Harry N. Pharr) and his mother and brothers under the terms of which it became the duty of the said Dowdy to clear up the back titles which he represented were void tax titles, and which could be cleared at small expense, and, this being done, to place said lands upon the market and to secure purchasers therefor, and to report to J. Scott Pharr and this plaintiff, who, it was mutually agreed, should conduct the business negotiations relative to the selling of said lands on the part of the Pharr heirs, for the purpose of fixing the prices on said lands and any other matters that might become necessary in disposing thereof. That it was further mutually agreed that after said titles were cleared up the said Dowdy was to pay all taxes." It may be said that the uncontroverted proof in this record, if competent, establishes the above allegations of the complaint. But the above allegations and proof show that the trust concerning the lands in controversy was an express and not an implied trust. The trust was one arising out of an express agreement between the parties, and not by implication or operation of law. Such being the case, in the absence of fraud on the part of Dowdy in procuring the deed from the Pharr heirs, the express trust concerning these lands could only be established by some writing in which the terms and purposes of the trust are expressed with such certainty that courts could enforce it.

Does the testimony show such fraud on the part of Dowdy in procuring the deed as would justify a court of equity in this action in declaring that the transaction created a trust *ex maleficio?* The undisputed facts with reference to this are that Dowdy was an abstracter of title to land in White County, and that he entered into a verbal contract with the appellant

whereby Dowdy was to examine the title to the lands of the Henry Pharr estate and pay any expense incident thereto, and in conjunction with the appellant would sell the lands and divide the proceeds after deducting the expenses incurred by Dowdy. The deed was executed to Dowdy, trustee, and to his successors and assigns. Dowdy did not clear up the titles, and in 1908 sold the land in controversy to the appellee for the sum of $25 without consulting the appellant.

In *Ammonette* v. *Black,* 73 Ark. 310, Judge RIDDICK, speaking for the court, quoted from Prof. Pomeroy as follows: " 'A second well-settled and even common form of trusts *ex maleficio,*' says Prof. Pomeroy, 'occurs whenever a person acquires the legal title to lands by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, a promise to con vey the land to a designated individual, or to reconvey it to the grantor, and the like—and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, so that the whole transaction by means of which the ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement.' There must, of course, in such cases be an element of positive fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply'."

And in *Bragg* v. *Hartney,* 92 Ark. 58, we quoted the following from Prof. Pomeroy: "In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the

beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrong-doer or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wher ever it is necessary for the obtaining of complete jus· tice, although the law may also give the remedy of damages against the wrong-doer.''

In 26 R. C. L. p. 1239, § 85, it is said: ''The mere breach of an oral agreement, standing alone, though often a moral wrong, is not sufficient to establish that fraud in procuring the title which is requisite to render the grantee a trustee *ex maleficio,* although the fact of such breach may, of course, be looked to, in connection with the other circumstances of the case, as sometimes constituting one of several links in a chain of facts going to prove fraud. If this were not so, the statute of frauds would practically be repealed, because no case can arise in the courts under it except where such a breach is charged, other than cases of fraud, either positive or constructive.'' See also *Spradling* v. *Spradling,* 101 Ark. 451.

Applying the above principles of law to the facts, we are convinced that Dowdy should be declared a trustee *ex maleficio.* He was an abstracter of titles and familiar with the status of the lands which the appellant and the other heirs had inherited from their father, Henry N. Pharr. Henry N. Pharr had not lived in Prairie County since the civil war, and the appellant did not live there and was not familiar with this particular tract of land. Dowdy sought the appellant and, after representing that the lands were beclouded with

tax titles which would have to be removed before the lands could be marketed and by promising that he would remove these titles and keep the taxes paid on the lands, induced the appellant to execute to him a quitclaim deed for the consideration of $1. He proceeded thereafter to sell the land at the mere nominal consideration of $25 and to appropriate the proceeds of the sale without appellant's knowledge or consent. Here it will be observed that there was a positive inducement held. out by one who, by virtue of his avocation, was familiar with the conditions concerning the title, to one who was not familiar with those conditions, and that false verbal promises were made to hold the land for certain specified purposes, such as removing clouds from the title, paying the taxes, making sales, etc., all of which required active management and control over the property.

These facts clearly distinguish this case from those cases where the grantee merely verbally promises to hold the land for another or to hold and convey the land upon the direction of the vendor. The facts tended to prove that it was the purpose of Dowdy to circumvent the appellant and thereby procure title to the lands in controversy. The facts of this case clearly differentiate it from the cases of *LaCotts* v. *LaCotts,* 109 Ark. 335, and *Ursery* v. *Ursery,* 113 Ark. 36, where there was nothing more than breach of a mere parol promise. Here the avocation of Dowdy and his knowledge acquired thereby with reference to the lands enabled him, by an intentionally false and fraudulent promise that he would hold title and to do certain other things in connection therewith, to procure the title to valuable lands upon a mere nominal consideration. This, as we view it, was a positive fraud in the procurement of the title. See *Ammonette* v. *Black, supra; McDonald* v. *Tyner,* 84 Ark. 189; see also *Barron* v. *Stuart,* 136 Ark. 481-495.

If courts of equity are powerless to uproot transactions of this kind because of the statute of frauds,

then indeed would that statute be converted into a means of perpetrating a fraud and shielding the guilty one in the possession of his ill-gotten property. The purpose of the statute was to prevent, and not to promote, frauds. "I have always understood," said the vice chancellor in *Padmore* v. *Gunning,* 5 Sim. 485, "that the court would interfere to prevent the obtaining of an estate by fraud, notwithstanding the statute of frauds." See also the many cases cited in note 1 to § 1054, Pomeroy's Equity Jurisprudence.

2. The appellee had notice of the trust. The appellee testified that he knew nothing of the Pharr title. He further stated that he "knew of the deed from Pharr to Dowdy at the time." The Pharr title was in the claim of his title and the source thereof, and he had to take notice of it. The *habendum* clause in the deed from Pharr to Dowdy contained this significant phrase: "To have and to hold the same unto the said P. P. Dowdy, trustee, and unto his successors and assigns * * *" The words, "trustee, and unto his successors" were sufficient to put any reasonably prudent person upon inquiry, which pursued would have discovered the trust.

In *Railroad Co.* v. *Durant,* 95 U. S. 576, 579, and cases there cited, it is held that "the designation (trustee) alone was sufficient to devolve the duty of inquiry upon any other person dealing with the property." But, even if the word "trustee," standing alone would not have that effect, this word, taken in connection with the words "and unto his successors," would clearly indicate that the property was held in trust, and at least devolve upon the appellee the duty of investigation to ascertain the true relation between Dowdy and the Pharr heirs. See *Graflin* v. *Robb,* 35 Atl. 971. The appellee, therefore, is not an innocent purchaser of the property. On the contrary, he at most only acquired such interest in it as Dowdy had, which was the mere naked legal title subject to the equitable estate of the Pharr heirs.

In *Banks* v. *Seaton,* 1 Peters 229, it is held, quoting syllabus: "It is well settled in equity, that all persons coming into possession of trust property, with notice of the trust, shall be considered as trustees; and bound, with respect to that special property, to the execution of the trust." *Ins. Co.* v. *Eldridge,* 102 U. S. 545; *Duncan* v. *Jaudon,* 15 Wallace 165; *National Bank* v. *Ins. Co.,* 104 U. S. 54; *Hallett* v. *Collins,* 10 Howard 174; *U. Pa. Ry. Co.* v. *McAlpin,* 129 U. S. 305; *Wormley* v. *Wormley,* 8 Wheaton 421; 39 Cyc. 548; *Pindall* v. *Trevor,* 30 Ark. 249.

In the case of *Bragg* v. *Hartney, supra,* it is held, quoting syllabus: "Wherever the legal title to property, real or personal, has been obtained through fraud or duress, or under circumstances which render it inequitable for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust in favor of the one equitably entitled to the same as against the original wrongdoer or any subsequent holder until a purchaser in good faith acquires title." See also *Pindall* v. *Trevor, supra.*

3. It follows that the appellant is entitled to the relief he prays unless he is barred by laches from maintaining this suit. The burden upon this issue was upon the appellee. The facts on this issue are substantially as follows: The deed of Pharr to Dowdy was executed in 1899, and the deed to Dowdy to the appellee was executed and recorded in 1908. This action was instituted in 1918. The appellant himself testified that he paid no taxes on the lands, and had made no effort to do so since he had deeded the same to Dowdy. The appellant was a non-resident of Prairie County. He had never made any trips to look after the lands; had made no effort to see whether Dowdy was paying the taxes except to write to him once or twice. He intended from time to time to come up there and investigate it and see why he hadn't heard from Dowdy and what he had done about the matter, but

didn't do so. The appellee began paying the taxes on the lands in the year 1908. He paid for that year and every year thereafter until the year 1913. The taxes for that year were paid by W. J. Miller. The appellee also paid the taxes for the years 1914, '15, '16, '17.

The sale of the lands by Dowdy and his appropriation of the proceeds without the knowledge or consent of the appellant was a repudiation of the trust. But the appellant had no actual knowledge of such repudiation. It is unnecessary to decide in this case whether the recording of the deed by the appellee was constructive notice to the appellant of the repudiation of the trust; for, conceding that it was such notice and that it put the appellant upon inquiry, he would have found upon investigation that the appellee had not, by any affirmative act, at that time exercised any ownership or control over the property.

The appellee did not thereafter exercise any affirmative act of ownership of the property except the payment of taxes as above indicated. As we have seen, the payment of these taxes was not continuous for a period of seven years, the longest continuous period being five years, and a period of nine years in all that appellee paid the taxes. The appellee did not take pedal possession of the property and begin to make improvements thereon until 1916, and in about two years thereafter the appellant instituted this action.

The appellee relies upon the decision of this court in *Turner* v. *Burke*, 81 Ark. 352, to sustain his contention that appellant is barred by laches. But in that case the real owner of the land had not paid the taxes for thirty-eight years. In the meantime there had been overdue tax decrees and a judgment in a suit in which the lands had been attached. The lands had been sold under the overdue tax decrees and the judgment in the attachment suit. These and other features wholly distinguish that case on the facts from the case at bar.

Under the facts of this record our conclusion is that the real owner of the lands should not be barred by laches from maintaining his action against the appellee. The appellant brought his suit within a reasonable time after the appellee took possession of the property, and he brought it before there had been such a continuous payment of taxes by others as to indicate an abandonment by the appellant of the lands. It cannot be regarded inequitable as against the appellee under the circumstances of this case to grant the appellant the relief for which he prays.

4. This brings us to the issue as to the betterments and taxes. The appellee, in his amended complaint, set up a claim for betterments which he itemized, amounting in the aggregate to $664, and for taxes, the amount of which is not specified. The appellant in his reply denied specifically the items claimed and set up that the appellee, during the time he had been in possession, had sold timber off the lands for which he had received the sum of $1,000, and denied that he had paid any taxes. The law on this subject is correctly stated in 39 Cyc. 643, as follows: "A purchaser of trust property from the trustee, in violation of the trust, and with notice of the trust, should be decreed to hold the property affected with the trust, and the purchaser may be decreed to reconvey to the *cestui que trust* on payment of the purchase money. Such a purchaser is liable, upon the sale being set aside, for the rents and profits of the property while in his possession; but should be allowed credit or reimbursement for sums which he has paid in good faith for taxes, to remove incumbrances, or in making permanent improvements on the property * * * ." See also *Stubbs* v. *Pitts,* 84 Ark. 160.

The testimony on the issue of betterments, taxes, rents, etc., as abstracted, is not satisfactory. For instance, the testimony does not show the amount of the taxes paid, and the appellee states that he had kept no

account of the expenses and had no receipts; and there is no testimony abstracted showing the amount of timber cut and removed from the land by the appellee, if any. There is no testimony as to the rental value of the lands. The court, therefore, is unable to render a satisfactory decree on the issue as to betterments, taxes, rents, etc. The parties, if so advised, may further develop the cause on that issue.

The decree is therefore reversed and the cause is remanded, with directions for further proceedings according to law and not inconsistent with this opinion.

McCULLOCH, C. J., (dissenting). I am unable to discover in this case any of the elements of a trust *ex maleficio*. There is nothing shown on the part of the alleged trustee except the breach of his promise to carry out the alleged trust, and this court has decided in all of the cases, beginning with *Ammonette* v. *Black*, 73 Ark. 310, that this is not sufficient to create an enforceable trust. *Bragg* v. *Hartney*, 92 Ark. 55; *Spradling* v. *Spradling*, 101 Ark. 451; *LaCotts* v. *LaCotts*, 109 Ark. 335; *Ussery* v. *Ussery*, 113 Ark. 36; *Worthen* v. *Vogler*, 145 Ark. 161; *Roberts* v. *Pratt*, 147 Ark. 575.

The controlling rule was stated by Judge RIDDICK in the opinion of this court in *Ammonette* v. *Black, supra,* as follows:

"There must of course, in such cases, be an element of fraud by means of which the legal title is wrongfully acquired, for, if there was only a mere parol promise, the statute of frauds would apply."

That rule has not heretofore been departed from, but it seems to me that the majority have disregarded it in the present case, for there is no proof of any fraud practiced by Dowdy in securing the conveyance from appellant—nothing except his subsequent failure to carry out the alleged trust.

It seems to me that appellant was barred by his own laches. He conveyed the land to Dowdy in the year 1899, and made no further inquiry nor showed any further con-

cern about it until shortly before the present action was instituted. He had never paid the taxes on the land for a single year. Dowdy conveyed the land to appellee in the year 1908, and thereafter died. Appellee placed his deed upon record and paid the taxes each year thereafter with the exception of one year, when it was paid by a stranger to both parties in this litigation. Appellant could have ascertained with slight diligence that Dowdy had conveyed the land to appellee without accounting to him as trustee. He could have known, year by year, by a simple inquiry, that appellee was paying taxes on the land and did so for nine years, with the exception of one year. In the meantime, Dowdy died, the only other witness to the transaction between him and appellant, and the land increased considerably in value.

The cases are numerous in which we have decided that the failure of a party who is *sui juris* to pay taxes on his wild and uncultivated land for a longer period than seven years if there has been an enhancement in values in the meantime, constitutes a bar by laches from equitable relief. In fact, the doctrine is so thoroughly settled that it is hardly worth while to undertake to enumerate the cases in which the question has been raised and decided. The case of *Turner* v. *Burke,* 81 Ark. 352, which is cited by the opinion of the majority, is only the beginning of the doctrine in this court. We have never decided before that the omission by the party claiming the benefit to pay taxes for a single year will defeat the application of the doctrine, for its application is based on the failure and omission of the owner to bear the burden of tax payments.

It is not essential that the defendant in a case, where equitable relief is sought, should himself have paid continuously for a period of seven years before the failure of the plaintiff to pay for that length of time is treated in equity as an abandonment and the doctrine of laches is applied against him so as to deny relief. Under the rule now stated by the court, nothing short of a complete

bar by the statute of limitation could call for the application of the doctrine of laches. That view of the matter abolishes the doctrine altogether, for if the defendant can successfully plead the statute of limitations and must do so in order to maintain his defense, then there is no occasion to invoke the doctrine of laches.

We held in *Earl Improvement Co.* v. *Chatfield,* 81 Ark. 296, and have since followed it, that enchancement in value and failure to pay taxes for a number of years short of the statutory period of limitation would not constitute a bar by laches. But it is quite a different thing to say, as the court is doing in the present case, that, regardless of the length of time the plaintiff has abandoned the land and failed to pay taxes, the defendant against whom equitable relief is sought cannot invoke the doctrine of laches unless he has paid for the full statutory period of limitation himself. No such distinction as that is found in any of our cases.

In the case of *Craig* v. *Hedges,* 90 Ark. 430, in stating the doctrine established by the decisions theretofore rendered, we said:

"The fact is established that appellant and his grantors, who originally owned the lands, completely abandoned them and asserted no title thereto nor paid any taxes thereon for a period of more than ten years before the complaint was filed in 1898. In the meantime, the lands became greatly enhanced in value—some of the witnesses say as much as fourfold. This conduct on the part of appellant's grantors constituted such laches as barred their right to assert title in a court of equity and to ask a court of equity for relief."

There is no intimation in this statement of the doctrine that the failure of the other party to pay for the full period of seven years continuously would prevent him from claiming the benefit of the plea of laches.

I dissent therefore from the conclusion of the majority and am clearly of the opinion that the appellant should be denied relief on both grounds stated therein.